DEPARTMENT OF STATE v MICHIGAN EDUCATION
ASSOCIATION-NEA

Docket No. 225155. Submitted January 15, 2002, at Lansing. Decided April
30, 2002, at 9:10 A.M.

The Department of State Compliance and Rules Division and the Sec-
retary of State initiated administrative proceedings against Michi-
gan Education Association-NEA, a corporation that sold political
polling services to an independent political committee, to deter-
mine if the respondent made a corporate campaign contribution in
violation of the Michigan Campaign Finance Act (MCFA), MCL
169.201 *et seq.*, in the form of a forbearance as the result of the
respondent's failure to collect the debt from the committee for a
period in excess of twenty-two months. A hearing officer issued a
decision and order finding that the respondent made a contribution
in violation of subsection 54(1) of the MCFA, MCL 169.254(1). The
respondent appealed to the Ingham Circuit Court. The court, James
R. Giddings, J., vacated the hearing officer's order, finding that the
term "forbearance" as used in subsection 4(1) of the MCFA, MCL
169.204(1), which defines "contribution," is unconstitutionally
vague and that the hearing officer failed to make a finding that the
forbearance was for a purpose forbidden by the MCFA, as required
by subsection 4(1). The petitioners appealed by leave granted.

The Court of Appeals *held*:

1. Because the MCFA implicates free speech, a heightened level of
scrutiny is required in determining whether the statute is unconsti-
tutionally vague.

2. The court erred in vacating the hearing officer's order. There is
no constitutional infirmity in the MCFA with respect to the term "for-
bearance" and its meaning with respect to corporate political con-
tributions. The MCFA provides fair notice of the conduct that is
proscribed.

3. The court erred in concluding that the petitioners' failure to
promulgate or adopt a rule further defining "forbearance" pre-
cludes enforcement based on illegal forbearance.

4. The evidence supports the hearing officer's finding that the
respondent made a contribution in the form of a forbearance; how-
ever, further fact finding is required by the hearing officer to deter-

mine if the forbearance was for a purpose prohibited by subsection 4(1). The matter must be remanded to the circuit court with directions to remand to the hearing officer for further proceedings.

Affirmed in part, reversed in part, and remanded.

1. ELECTIONS — CONSTITUTIONAL LAW — CAMPAIGN FINANCE ACT — WORDS AND PHRASES — FORBEARANCE.

The prohibition in the Michigan Campaign Finance Act against corporate political contributions in the form of "forbearance" is not unconstitutionally vague; the act provides fair notice of the conduct that is proscribed (MCL 169.204[1], 169.254[1]).

2. ELECTIONS — CAMPAIGN FINANCE ACT — CORPORATE POLITICAL CONTRIBUTIONS — FORBEARANCE.

The Michigan Campaign Finance Act prohibits corporate political contributions in the form of forbearance where the forbearance is given for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question (MCL 169.204[1], 169.254[1]).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Katherine C. Galvin,* Assistant Attorney General, for the petitioners.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Michael J. Hodge* and *Clifford T. Flood*), for the respondent.

Before: GAGE, P.J., and HOEKSTRA and METER, JJ.

HOEKSTRA, J. Petitioners appeal by leave granted from a circuit court order vacating a hearing officer's order that found respondent in violation of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.* We affirm in part, reverse in part, and remand for further proceedings.

Respondent is a corporation that in 1994 sold political polling services to an independent political com-

mittee[1] (the committee) for $61,651.50. At some point, respondent sent the committee a bill for these services dated December 31, 1994. The committee acknowledged the debt for the first time in its July 1995 triannual campaign statement. Subsequently, the committee's campaign statements filed for October 1995 and for April 1996 continued to show the debt. These statements also showed that the committee paid thousands of dollars on other debts, had other remaining outstanding debts in addition to the debt owed to respondent, and had a net operating balance. The July 1996 statement reported that the committee paid $256,588.40 on other debts, leaving a debt balance of $61,650.50, and had an end balance of $39,121.84. The October 1996 statement indicates no payments on debt, a debt balance of $61,651.50, and an end balance of $80,977.52. Since the original bill dated December 31, 1994, respondent had neither sent any other written demand to the committee for payment of the debt nor filed a lawsuit for collection of the debt; however, respondent had not "forgiven" the debt. Further, Allan Short, respondent's director of government affairs, testified that he had been in contact with the committee on a monthly basis concerning payment of the debt, that respondent offered the committee the possibility of installment payments, and that respondent expected to be paid.

In May 1996, petitioners received a complaint alleging that respondent may have violated the MCFA by making a corporate campaign contribution. Petitioners notified respondent of the complaint and there-

---

[1] The Michigan House Democratic Fund, formerly known as Hope for the Future of Michigan.

after initiated administrative proceedings. Those proceedings culminated in a hearing officer's issuing a final decision and order on October 13, 1997, finding that respondent had violated MCL 169.254(1) (subsection 54[1]) by making a contribution to the committee in the form of a forbearance. The hearing officer acknowledged that petitioner Secretary of State had no rules or standards to define "forbearance" under MCL 169.204(1) (subsection 4[1]). The hearing officer further stated that petitioners had not applied a consistent standard regarding the meaning of forbearance, having never commenced an enforcement action on the basis that a committee has failed to pay a corporate debt for a period in excess of twenty-two months. Nevertheless, the hearing officer found respondent to be in violation of the MCFA according to the "plain and ordinary meaning" of "forbearance." Specifically, the hearing officer quoted Black's Law Dictionary and *Webster's New World Dictionary* for the following definitions of "forbearance":

> "Refraining from doing something that one has a legal right to do. Giving of further time for repayment of obligation or agreement not to enforce claim at its due date. A delay in enforcing a legal right. Act by which creditor waits for payment of debt due him by debtor after it becomes due.
> "Refraining from action. The term is used in this sense in general jurisprudence, in contradistinction to 'act.'
> "Within usury law, term signifies contractual obligation of lender or creditor to refrain, during a given period of time, from requiring borrower or debtor to repay loan or debt then due and payable."[2]

---

[2] This text, with the omission of case citations, is directly quoted from the hearing officer's decision that in turn quotes Black's Law Dictionary (rev 6th ed).

*   *   *

"The act of forbearing, to refrain from; avoid or cease (doing, saying, etc.) *Law* the act by which a creditor extends time for payment of a debt or forgoes for a time his right to enforce legal action on the debt."[3]

Having found that respondent violated subsection 54(1), the hearing officer imposed a statutory penalty pursuant to MCL 169.215(6)[4] of a civil fine equal to the amount of the improper contribution plus an additional $1,000, totaling $62,651.50.

Respondent appealed the hearing officer's order to the circuit court.[5] The circuit court heard oral argument in October 1998, and in September 1999 issued its opinion vacating the hearing officer's order.[6] In its decision, the circuit court determined that the hearing officer's order must be vacated because "it is not authorized by law, is arbitrary and capricious, and is not supported by competent, material and substantial evidence on the whole record."

Specifically, the circuit court concluded that the term "forbearance" as used in the MCFA is unconstitutionally vague, "not because it does not have definite and well-recognized meanings but, rather, that there is no way to discern which particular meaning or meanings the Legislature intended to employ in the MCFA." The circuit court found five distinct definitions

---

[3] This text is directly quoted from the hearing officer's decision that quotes *Webster's New World Dictionary, Second College Edition* (1980).

[4] Now MCL 169.215(11).

[5] The final decision and order of the Secretary of State is subject to judicial review pursuant to chapter 6 of the Administrative Procedures Act, MCL 24.301 to 24.306. MCL 169.215(6), now (12).

[6] A final order consistent with the circuit court's opinion was entered on January 27, 2000.

in Black's Law Dictionary (revised 6th ed) and two distinct definitions in *Webster's New World Dictionary, Second College Edition* (1980). According to the circuit court, the Secretary of State "failed to give corporations proper notice of its expectations of lawful corporate conduct in avoiding even the appearance of forbearance on debts owed by political committees."[7] The circuit court concluded that the failure to adopt a rule further defining forbearance precluded enforcement based on illegal forbearance and that, in the absence of administrative guidance, the hearing officer's interpretation of forbearance was arbitrary and capricious. The circuit court also found that the hearing officer's decision was based on insufficient evidence of respondent's specific purpose to influence the electoral process, as subsection 4(1) requires, that the hearing officer never even posed the question whether respondent had the requisite intent, and that the testimony of Allan Short indicated that respondent had other reasons for not insisting on immediate payment of the debt. Because the hearing officer made no finding whether the "forbearance" was for "an illicit purpose," the circuit court found that the MCFA was not enforced as written. Petitioners now appeal by leave granted the circuit court's order vacating the hearing officer's order.

We first address petitioners' argument that the circuit court erred in holding that the MCFA's prohibition against corporate political contributions in the form of forbearance is unconstitutionally vague. The constitutionality of a statute is a question of law that this

---

[7] See MCL 169.215(1)(e) (the Secretary of State shall "[p]romulgate rules and issue declaratory rulings to implement this act . . . ."); see also MCL 169.215(2).

Court reviews de novo. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001); *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 461; 639 NW2d 332 (2001).

"The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." *State Treasurer v Wilson (On Remand)*, 150 Mich App 78, 80; 388 NW2d 312 (1986), citing US Const, Am XIV; Const 1963, art 1, § 17. With regard to a challenge to the constitutionality of a statute based on vagueness, this Court has explained:

> A statute may qualify as void for vagueness if (1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated. [*Proctor, supra* at 467, citing *Ray Twp v B & BS Gun Club*, 226 Mich App 724, 732; 575 NW2d 63 (1997).]

See also *Hill v Colorado*, 530 US 703, 722; 120 S Ct 2480; 147 L Ed 2d 597 (2000); *People v Lino*, 447 Mich 567, 575-576; 527 NW2d 434 (1994).

To determine whether a statute is void for vagueness, a court should examine the entire text of the statute and give the words of the statute their ordinary meanings. *People v Piper*, 223 Mich App 642, 645; 567 NW2d 483 (1997); *In re Forfeiture of 719 N Main*, 175 Mich App 107, 111; 437 NW2d 332 (1989). Substantive due process requires standards in a statute to be "reasonably precise" in order to ensure that individuals are not held responsible by the state for conduct that they could not reasonably understand to be proscribed. *Sillery v Bd of Medicine*, 145 Mich App 681, 686; 378 NW2d 570 (1985); *K mart Corp v*

*Dep't of State*, 127 Mich App 390, 395; 339 NW2d 32 (1983). Stated another way, "[t]o give fair notice, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999) (internal citation omitted); *In re Gosnell*, 234 Mich App 326, 334; 594 NW2d 90 (1999).

In addition to this general framework for analyzing whether a statute is unconstitutionally vague, a heightened level of scrutiny is required because the MCFA implicates free speech.[8] Our Supreme Court has stated, in the context of the similar overbreadth doctrine,[9] that when a statute restricts political expression, which occupies the core of First Amendment protection, it will be subjected to exacting scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest. *In re Chmura*, 461 Mich 517, 532-534; 608 NW2d 31 (2000); see *Buckley v Valeo*, 424 US 1, 14-15; 96 S Ct 612; 46 L Ed 2d 659 (1976) (explaining the importance of political speech). This Court too has recognized that where

---

[8] The MCFA involves the regulation of conduct that the First Amendment protects. *Austin v Michigan Chamber of Commerce*, 494 US 652, 657-658; 110 S Ct 1391; 108 L Ed 2d 652 (1990) ("The mere fact that the Chamber [of Commerce] is a corporation does not remove its speech from the ambit of the First Amendment. . . . Although [the MCFA] requirements do not stifle corporate speech entirely, they do burden expressive activity.").

[9] With regard to the distinction between vagueness and overbreadth, this Court has noted:

Although both the void-for-vagueness and overbreadth doctrines are concerned with curbing arbitrary and discriminatory enforcement, they are nonetheless distinct jurisprudential concepts. When freedom of speech is implicated, the doctrines even more closely parallel each other, given that each is also concerned with the possibility that a statute or ordinance might impermissibly chill the freedom of expression. [*Plymouth Charter Twp v Hancock*, 236 Mich App 197, 199-200; 600 NW2d 380 (1999) (citations omitted).]

the First Amendment safeguards the activity to be regulated, the standard of permissible statutory vagueness becomes more strict. *United Pentecostal Church v 59th Dist Judge*, 51 Mich App 323, 326; 214 NW2d 866 (1974). The United States Supreme Court has explained: "The general test of vagueness applies with particular force in review of laws dealing with speech. '[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech[.]' " *Hynes v Mayor & Council of the Borough of Oradell*, 425 US 610, 620; 96 S Ct 1755; 48 L Ed 2d 243 (1976), quoting *Smith v California*, 361 US 147, 151; 80 S Ct 215; 4 L Ed 2d 205 (1959). However, we also recognize that the United States Supreme Court more recently stated that the standard of scrutiny for restrictions on contributions requires less compelling justification than for restrictions on expenditures. *Nixon v Shrink Missouri Government PAC*, 528 US 377, 387; 120 S Ct 897; 145 L Ed 2d 886 (2000).

In the present case, petitioners argue on appeal that the circuit court erred in holding that the prohibition against corporate political contributions in the form of forbearance is unconstitutionally vague. In response, respondent maintains that the circuit court correctly determined that "forbearance" is unconstitutionally vague because it has multiple meanings and no guidance is provided concerning what conduct is proscribed. Keeping the above principles in mind, we conclude that the circuit court erred in vacating the hearing officer's order because there is no constitutional infirmity in the MCFA with respect to the term "forbearance" and its meaning with respect to corporate political contributions.

Subsection 54(1) of the MCFA prohibits corporations from making a "contribution,"[10] as that word is defined in subsection 4(1) of the act:

> "Contribution" means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.

The point of contention in the present case is the alleged vagueness of the word "forbearance." Because the MCFA does not define "forbearance," that word should be construed according to its ordinary meaning. MCL 8.3a;[11] *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 240; 362 NW2d 618 (1984); *In re Forfeiture, supra* at 111. Resort to dictionary definitions is appropriate in determining a word's common and approved usage, *K mart, supra* at 395, and a court must also consider the context in which the word appears in order to determine which of these ordinary meanings it carries in the statute under scrutiny, *Bio-Magnetic Resonance, Inc v Dep't*

---

[10] We note that the United States Supreme Court already held "that application of [subsection] 54(1) to the Chamber [of Commerce] is constitutional because the provision is narrowly tailored to serve a compelling state interest." *Austin v Michigan Chamber of Commerce*, 494 US 652, 655; 110 S Ct 1391; 108 L Ed 2d 652 (1990).

[11] MCL 8.3a provides:

> All words and phrases [in statutes] shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

*of Public Health,* 234 Mich App 225, 230; 593 NW2d 641 (1999).

Having reviewed the entire statute, paying particular attention to the subsections in question here, we find that the term "forbearance" as used in the MCFA is not unconstitutionally vague. A word used in a statute need not have but a single meaning to pass constitutional muster. Subsection 4(1) provides a litany of concepts that equate to a contribution for the purposes of the MCFA, and thus it is not difficult to glean from the statute that a broad interpretation of the word "forbearance" is intended. Here, it is abundantly clear from the context in which "forbearance" appears that the Legislature's intent was to prevent a corporation from conferring something of monetary value for a prohibited purpose, which encompasses many dictionary definitions of the word forbearance. This intent is particularly clear in light of the words that forbearance is directly associated with in the definition of contribution. *State ex rel Wayne Co Prosecuting Attorney v Levenburg,* 406 Mich 455, 466, n 8; 280 NW2d 810 (1979) (the meaning of words may be known from, and take color from, the accompanying words). Thus, it cannot be said that the MCFA, with regard to forbearance, does not provide fair notice of the conduct that is proscribed. When determining whether a statute is void for vagueness, the reviewing court need not set aside common sense, nor is the Legislature required to define every concept in minute detail. Rather, the statutory language need only be reasonably precise. Because the use of the word "forbearance," when read in the context of the MCFA, has a distinct and readily apparent meaning, albeit a broader meaning than respondent would desire, the

circuit court erred in finding the MCFA unconstitutional in that respect.

Further, we reject the circuit court's conclusion that petitioners' failure to promulgate or adopt a rule further defining "forbearance" precludes enforcement based on illegal forbearance. First, we have concluded that use of the word "forbearance" in the MCFA is not unconstitutionally vague, and therefore further definition is not necessary, although not precluded. Moreover, although the Secretary of State has the power and duty to promulgate rules enforcing the statute and carrying out its provisions, MCL 169.215(1)(e), this Court has recognized that "an administrative agency need not always promulgate rules to cover every conceivable situation before enforcing a statute." *DAIIE v Comm'r of Ins*, 119 Mich App 113, 117; 326 NW2d 444 (1982); *K mart Corp*, *supra* at 396; see also *Sillery*, *supra* at 687 (neither a statute nor administrative rules promulgated thereunder need list each specific instance of conduct encompassed by the statutory standard).[12] In this regard, we believe that this case is similar to that of *Sillery*, *supra*. There, this Court concluded that subsection 16221(a) of the Public Health Code, MCL 333.16221(a), which provides grounds for disciplinary subcommittee action, including a licensee's "negligence or failure to exercise due care," was suffi-

---

[12] Having determined that the term "forbearance" as used in the MCFA is not unconstitutionally vague and that the lack of rules further defining that term does not preclude enforcement based on forbearance, it follows that the hearing officer's decision was neither arbitrary and capricious nor unauthorized by law on those bases. To the extent that respondent argues on appeal that petitioners arbitrarily enforced the MCFA in this case, we agree with the circuit court that respondent failed to demonstrate arbitrary enforcement.

ciently specific and did not require further delineation in the statute or in rules. According to the *Sillery* Court, "[s]uch a task would require an exhaustive enumeration of countless instances of conduct which obviously came within the purview of this standard." *Sillery, supra* at 687. The *Sillery* Court also noted that persons might be able to escape regulations, even if they have committed egregious acts, simply because of oversight or the inability to articulate all possible forms of negligence. *Id.* Similarly, we believe that promulgating rules to define when a forbearance might occur is unnecessary because the task could not possibly articulate every possible instance of forbearance and the result would be that some instances of forbearance could evade enforcement. "Substantive due process requires only that the standards be as reasonably precise as the subject matter requires or permits." *Id.*; accord *Osius v St Clair Shores*, 344 Mich 693, 698; 75 NW2d 25 (1956); *Krohn v Bd of Medicine*, 98 Mich App 129, 133; 296 NW2d 57 (1980). Here, we are satisfied that "forbearance" is sufficiently precise even under the heightened scrutiny required for restrictions on political expression.

Petitioners also argue that the circuit court erred in concluding that the hearing officer's decision was not supported by competent, material, and substantial evidence. With regard to an appellate court's review of a circuit court's review of an administrative agency decision, in *Boyd v Civil Service Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996), this Court held

> that when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or

> grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made.

"Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Michigan Ed Ass'n Political Action Committee v Secretary of State*, 241 Mich App 432, 444; 616 NW2d 234 (2000).

Here, the evidence presented before the hearing officer unquestionably established that respondent made a contribution in the form of a forbearance to the committee. No matter how respondent's conduct is parsed, respondent gave something of value to the committee without receiving payment for it for an extended period. In fact, the circuit court acknowledged that the circumstances in the present case are "certainly forbearance according to some definitions." However, as the circuit court recognized, the inquiry with regard to whether a violation of the MCFA occurred does not end at this point. To meet the definition of a contribution pursuant to subsection 4(1), the forbearance must have been given for a specific purpose. The relevant purposes, as defined in subsection 4(1), are for "influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." The hearing officer made no findings of fact concerning respondent's purpose. According to the circuit court, this omission

was the "gravest flaw" of the hearing officer's decision. The circuit court felt that there was no evidence at all on this point, stating that "[t]he question [whether respondent had any political motive, let alone the specific purpose of influencing the electoral process] was not even posed much less resolved in [the] proceedings below."

It might be inferred that the transfer of the polling information to the politically oriented committee could be for no purpose other than to influence in some way an election or ballot question. However, the hearing officer never expressly stated whether he made such an inference. As a result, it is not apparent from the record whether the hearing officer neglected to consider this "purpose" requirement of subsection 4(1) or did in fact make such an inference before concluding that respondent violated subsection 54(1) by making a prohibited contribution. Thus, it appears that further factual findings are necessary. Because fact finding is within the province of the administrative agency, see *Gordon v Bloomfield Hills*, 207 Mich App 231, 232; 523 NW2d 806 (1994) (a reviewing court may not invade the province of exclusive administrative fact finding); *Freiberg v Big Bay De Noc School Dist Bd of Ed*, 91 Mich App 462, 465; 283 NW2d 775 (1979), remand to the hearing officer is required.

Affirmed in part, reversed in part, and remanded to the circuit court with direction to remand to the hearing officer for further proceedings consistent with this opinion. We do not retain jurisdiction.